We will take the cases in the order in which they appear on the docket sheet. And the first case is Dutt v. Mckaysey. Good morning. May it please the Court, Joe Sequenza for petitioner. Petitioner submits this morning that there are two issues relating to the third and fourth motions to reopen in this case. The first issue and the central issue we maintain is whether the I.J. exceeded his jurisdiction or authority by taking testimony on matters that were previously adjudicated on the issue of past persecution and not limiting the remand hearing to testimony on changed country conditions as proffered by respondents in a motion to advance. The second issue is whether the BIA abused its discretion in failing to remand for changed country conditions on a prima facie showing by a respondent. We maintain that the Board engaged in impermissible fact-finding in that regard rather than remanding for a hearing on that issue. With respect to whether the I.J. had exceeded his jurisdiction or authority with respect to the remand hearing in 2002, petitioner maintains that this is not a situation where the transcript of the initial hearing was not complete or it was ambiguous or vague or that particular matters were not fully explored, and it's not a situation where there were inconsistencies in the respondent's previous testimony. It's significant to note that the remand I.J. and the parties did discuss at the remand hearing before testimony was taken what the scope of that remand hearing would involve, and I believe that the I.J. had specifically stated that the law of the case controlled with respect to the previous I.J.'s findings, especially on credibility. And though the first I.J. had found respondents credible, the first I.J. had found that their experiences in Fiji did not rise to the level of persecution. In other words, they said, well, let's start all over again, and we'll talk about the whole thing. And then the judge said, well, we've got the law of the case. My recall of the remand hearing and the A.R., Your Honor, is that Respondent's Counsel at that time, and there have been several attorneys in this case, Respondent's Counsel at that time had filed a motion to advance, and in the motion to advance had specifically stated that they were proffering testimony just based on changed country conditions. They go into the hearing, and there is an on-the-record discussion between the I.J. and the parties, and the I.J. did specifically state that the law of the case should control with respect to the first I.J.'s findings, especially on credibility. And to reopen the case, whether it was the fault of the I.J. in not limiting the scope or possibly the fault of Respondent's Counsel at that time in failing to limit the scope of the testimony, the testimony was wide open at that point for whatever reason, and it prejudiced the Respondents. And it led to a ruling by the remand I.J. that there was an adverse credibility finding based on what he perceived to be inconsistencies between their testimony at the time. Well, it was highly inconsistent with his earlier testimony, wasn't it? I mean, some of them have some deaths in them, and the other testimony doesn't, and it's pretty radically different. Granted, there were some significant discrepancies in the testimony. We believe that the error occurred when the parties in the I.J. did not make an effort to limit the scope of that testimony. If the I.J. had only taken testimony on well-founded fear and changed country conditions, perhaps a different outcome would have, or we would submit a different outcome, would have resulted that the I.J. would have found that there was well-founded fear of persecution based on the 2000 coup, excuse me, the 2000 coup in Fiji. There's been another coup since then, however. I don't know how much attention we have. It would be relevant to my second issue that I've stated, that we submit that the Board failed to remand this case for testimony and a full hearing on changed country conditions based on the 2006 coup. We believe that the Board abused its discretion in, in effect, engaging in fact-finding by considering not only the sworn declaration of the respondent that was attached to the fourth motion to reopen and voluminous country conditions articles that were submitted by a respondent. We submit that there was a prima facie showing at that point that would have enabled the Board to remand the case for a full hearing on that evidence and any other evidence that might be relevant and material on respondents' well-founded fear in light of the 2006 coup. And given the history of four coups in Fiji and given the racial tensions and the animosity between Native Fijians and Indo-Fijians, it's reasonable to presume that respondent, as a result of the 2006 coup, did possess a well-founded fear of returning to Fiji that would have entitled him to a remand hearing. What is there about this latest coup that would result in the Petitioner being singled out for prosecution or persecution, I should say? I know that, yes, Your Honor, I believe that the Board did reference that in their decision denying the appeal. But we would submit that it's not necessarily that Petitioner himself would have been personally targeted. It's just that given the history of the country and the fact that there have been four coups and the ongoing animosity and racial tensions between Native Fijians and Indo-Fijians, we would submit that Indo-Fijians remain a most vulnerable target of the Natives and the government, and they are deserving of asylum protection. Granted, there was reference in the Board's decision to the fact that the proponent of the coup, so to speak, did not maintain animosity toward Indo-Fijians, but that doesn't change the fact that just because of one's political beliefs, that it automatically precludes the finding that there are still tensions in that country, given, again, the history of four coups, that at least would entitle Petitioner to a shot again at remand to proving well-founded fear. I guess what Judge Mills was going to is the individualized requirement. I mean, so there was this coup, but what's in the record, the latest coup, that that would make your client subject to individualized persecution? It would, Your Honor. We would submit that there was a prima facie showing based on his declaration and the fact that he had referenced that there were people in Fiji that he knew had told him that Indo-Fijians were still being targeted by Natives in that respect. So with respect to any individualized determination, we would submit that there is a prima facie showing there that should be fully explored at a remand hearing. It deprived the respondents of that opportunity. So let me ask you a question on the voluntary departure issue. It's plainly clear that the BIA erred by reducing the voluntary departure time, but your clients have had their voluntary departure stay pending issuance as a mandate. How do we correct that error? Do we issue an order giving your clients, if we were to deny the petition, giving your clients 90 days? Yes. I believe that the Board, in the recent past, had been routinely reducing the period of voluntary departure, and most recently the Board has corrected itself in reinstating, rather, the full 90-day voluntary departure period, and that's what should occur in this case also. The government says that they have overstayed even the 90-day period. In other words, the voluntary departure wasn't stayed and expired. I believe, if I recall the AR correctly, Your Honor, I believe that it's a long procedural history here, but I believe that the voluntary departure issue was preserved on appeal and the appropriate stays were requested. If the reduction of the voluntary departure period by the Board, impermissibly by the Board, adversely affects the Respondent's right, if you will, to voluntary departure in this case, even on appeal, we would submit that the Board can correct its own error and permit the voluntary departure period to be reinstated. And if there are no further questions, I'll reserve rebuttal. Thank you. Good morning, Your Honors. May it please the Court, my name is Julia Tyler, and I represent the Attorney General of the United States in this immigration matter. Your Honors, this is a consolidated case, as you know, involving three separate petitions for review, which were filed by an Indo-Fijian family who overstayed their visas in 1995, and they received a complete adjudication of their claims in 1996. That adjudication was a denial of their claims of asylum withholding and CAT, and that decision was affirmed by the Board, and these individuals took no appeal from that decision. They were ordered deported after they overstayed their grant of voluntary departure, and since that time, they were ordered deported in 1997, and since that time, they have filed a series of four untimely motions to reopen that have given rise to the three petitions for review which are before this Court today. In light of our limited time, I'd be happy to address the issues that Petitioner's Counsel raised, although there are three petitions for review before this Court, and there are all sorts of issues regarding adverse credibility and the ineffective assistance of counsel. If the panel wants me to go into any of those, I'm happy to. I'm interested in this voluntary departure issue because our docket indicates that it stayed pending issuance of the mandator for the order of this Court, and the BIA did err in reducing it, so I don't know how that works. Well, Your Honor, actually, I don't think it's so much an issue that it wasn't stayed. I think in one of the briefs, one of the attorneys took the position for the government that perhaps because Dutt failed to leave pursuant to the grant of voluntary departure, that the family was barred from being granted voluntary departure again. As you know, under ERIRA, there's a ten-year bar. When you fail to depart pursuant to a grant of voluntary departure, you don't get voluntary departure again. There's a bar of ten years. In this case, however, the grant of voluntary departure was granted pursuant to a pre-ERIRA statute, which is 242BE2, which is only a five-year bar. And so because they filed various motions to reopen and were granted voluntary departure again, I believe just shy of ten years later, we don't take the position that their overstay and their failure to leave pursuant to that voluntary grant was an error. And we do concede, actually, that the BIA reduced the voluntary departure period granted by the IJ from 90 to 30 days. That happened in 2004. And this Court in 2006 in Padilla-Padilla determined that it is inappropriate when a board affirms without opinion to reduce the voluntary departure period from 90 to 30 days. So the government would take the position that the petitions for review should be denied with respect to the motions to reopen and the remand hearing as well, and that there should be a very limited remand solely for the purpose of reforming the board's order to grant them 90 days' departure. Your Honors, addressing the issue of the permissible scope of the remand, the government submits that the immigration judge in this case did exactly what he was tasked on remand to do. He held a hearing to allow the respondents the opportunity to present evidence on changed country conditions and their fear of persecution in Fiji should they be required to return. And, Your Honor, Dutt did argue at the hearing in 2002 that the hearing should be de novo as to all issues. And if you specifically look at the immigration judge's decision, the immigration judge denied that request, but he did provide the Dutts with substantial leeway in the testimony. And I'd like to specifically point the court to the record at 731 when the immigration judge very carefully thought this issue through and said, I do think there would be a problem if we tried to limit how the respondent tried to use his personal situation and the changed country conditions that he's arguing to establish a claim. So I'm going to grant the respondents a lot of latitude in what he can present today. In addition, Your Honors, Dutt put his own past experiences at issue when he supplied a declaration on June 10th of 2002 prior to the remand hearing. And at that time he went into great detail with regard to facts, which, by the way, were contained in his original I-589 application, which is found in the record at page 1182 to 1188, which at the time in 1996 he claimed that a man named Dutt was a member of the National Federation Party. So he submitted a declaration which put these points at issue, and then at the hearing on June 14th he claimed that the whole hearing should be de novo as to all issues, which the immigration judge denied. In addition, the testimony that Dutt was supplying was the fact that he was now or was at the time in Fiji a member of the National Federation Party. The SVT were now in power, and the SVT are the opposing party to the NFP. So clearly his testimony regarding his membership or alleged membership in the NFP goes directly to the issue of well-founded fear. And finally, in almost a point of irony, I would direct the Court's attention to Dutt's motion to reopen number four, in which his testimony was that he would revisit the respondent's entire case in light of current country conditions. So again, here we have the fourth motion to reopen based on the 2006 coup, and Dutt's current counsel is arguing to the board that it should reopen the entire case and examine the entire case de novo, which would be very inconsistent with the position that he's taking before the Court today. Your Honor, with respect to the fourth motion to reopen, which I believe is the other issue that Petitioner's counsel raised, the board acted within its broad discretion in denying the motion to reopen, where Dutt's motion was untimely and they failed to show changed country conditions in Fiji sufficient to warrant reopening. There was absolutely no evidence in the record that this bloodless coup, which was staged by Commodore Bonomarama, was remotely aimed at Indo-Fijians. As a matter of fact, while Bonomarama is an ethnic Fijian, he himself said that these are the articles that Petitioner put into evidence. He said that he sees himself as the guardian of the Fijian constitutional guarantees. He wants to bring a modern multiracial experience to Fiji. And in addition in these articles, it states that the Army chief has strong support among the Indo-Fijian community. And I — it's very interesting, and this Court in Sing specifically said that in order to establish well-founded fear, and that in Sing was a Fijian case, you cannot simply prove that there exists a generalized or random possibility of persecution, but you must show that this individual is particularly at risk and that his predicament is appreciably different from other Fijian individuals. If I may briefly comment on Mr. Dutt's declaration. It's interesting because Dutt's brief on appeal stated that he was upset with the board and claimed that the board had erred because they did not properly consider Dutt's evidence. I'm not hearing that argument today. I'm hearing that he did consider the evidence, and perhaps they engaged in some de novo fact-finding. By the way, I've never heard that argument before today. However, with respect to the declaration that Mr. Dutt filed, he stated that he had heard from friends and family that conditions were poor in Fiji. I'd raise two points. If you examine the record, he claimed in 1996 and again in 2002 that he had no family in Fiji and he had no friends in Fiji. It's quite interesting that when you look at that declaration, Mr. Dutt fails to identify who any of these friends or family are or what their relationship to him is. And specifically, even if his sworn statement is taken at face value, it does not provide a shred of evidence demonstrating persecution against Indo-Fijians, much less an individualized risk of persecution. In fact, looking at it, which is at the record at pages 66 to 67, he says that these relatives and friends in Fiji communicated conditions that they remain dangerous, that the situation is volatile and fragile, that citizens are being detained and interrogated, and that people are frightened. They don't even mention Indo-Fijians, and they certainly don't mention NFP members. They don't mention Mr. Dutt or Mr. Dutt's family. If Your Honors have any questions for me, I'd ---- Thank you. Thank you very much. Just briefly, it's significant to note that at the remand hearing, and this is at AR 735, the I.J. stated that the issue of past persecution has been addressed by the court, previous court, that I don't find that it is an issue before me. And at 731, the I.J. stated we have a law in the case that remains in effect. And he further stated that the issue on remand specifically was how changed country conditions would affect the respondent and why he would have a fear of returning, and we would submit that that should have been the scope of the remand hearing. Government does refer to respondent's declaration that was attached to the third motion to reopen that resulted in this 2002 remand hearing. We would submit that the respondent's declaration, even though he does restate his previous experiences in Fiji, that's all it can be interpreted as, is just merely a restatement of his prior declaration and his testimony. It was not inconsistent with his previous testimony and declaration, and it provided no basis for the I.J. to reopen testimony on past persecution.
judges: Canby, Wardlaw, Mills